## TALLY v. ATKINSON et al.

### No. 10671.

Court of Civil Appeals of Texas. Galveston.

July 22, 1937.

Bailey P. Loftin and C. M. Alderson, both of Houston, for relator.

Larry W. Morris (of Sewell, Taylor, Morris & Garwood), of Houston, for respondents.

GRAVES, Justice.

Perhaps this case has earned the title of "cause celebre"; its former appearances under the same name and style in both this and the Supreme Court may be found reported, respectively, in Tally v. Texas Employers Ins. Ass'n (Tex.Com.App.) 48 S.W.(2d) 988; Id. (Tex.Civ.App.) 93 S.

W.(2d) 1209, and Id. (Tex.Sup.) 102 S. W.(2d) 180.

It now comes here as an original application for writ of mandamus to compel the present judge of the Eleventh district court of Harris county, Hon. Norman Atkinson, to grant a motion the relator had filed there on April 24 of 1937, asking that he be given a recovery against the association for 401 weeks of compensation at $13.85 per week, as upon a jury's verdict rendered in such cause in that court in June of 1933, which is fully described in the Supreme Court's last opinion, cited supra, at pages 182 and 183 of 102 S.W.(2d), the judgment entered by the trial court on that verdict, however, having been one awarding this relator the right to a hernia operation only.

In other words, pursuant to this last-mentioned judgment of the Supreme Court, wherein it simply dismissed the attempted appeal therein made to it, upon a holding that neither it nor any of the prior appeals taken by Tally had ever been from a final judgement of the district court in the cause, saying it did so "without prejudice to the right of either party to prosecute this cause to final judgment in the district court," he merely went back into that same trial court and so moved in the old case, neither asking a further trial nor even proffering any new or additional evidence; the able Judge Atkinson refused the motion, thus assigning his reasons therefor:

"In this case J. J. Talley was injured on September 22, 1928. The case was tried June 16th, 1933, before Hon. Charles E. Ashe, and submitted to the jury on special issues.

"In answer to Special Issue No. 6 the jury found that as a result of such injury Talley was totally incapacitated for work. In answer to Special Issue No. 7 they found that on the date of the trial his total incapacity was not permanent. No other issues were submitted to the jury relative to either total or partial incapacity or the extent or degree thereof.

"Talley testified 'I am not able to do any work now'. He also testified in substance that from the date of the injury up to the time of the trial he had been unable to do any work other than trying to work around his home. He testified on cross-examination that at the time of the trial he was wearing a truss which he got about a year before the trial. This is about the substance of Talley's testimony as to disability. Talley's witness, Dr. James M. Stuckey, testified on the trial that Talley at the time of the trial was wearing a truss. That a hernia is a permanent condition, and that a man with a condition like that cannot do hard work. On cross-examination he stated that he had known of men working who had a hernia 'some of them can if they have a proper fitting truss. But this man has had an ill fitting truss.' He further testified 'a man given a properly fitted truss can do work, but not heavy work. This man could be a watchman, or something like that, or do clerical work. He could drive a truck if he didn't have to do any lifting, or he could drive a service car. He could do anything that wouldn't require him to be standing on his feet or do lifting. There are a good many classes of work he could follow.'

"Dr. E. M. Armstrong was also called as a witness for Talley. His testimony was limited to the existence of the hernia and the probable success of an operation.

"None of this testimony indicates the length of Talley's total incapacity, other than his own statement that up to the time of the trial he had not been able to do any work. The testimony of his witness, Dr. Stuckey, contradicts this to some degree in that the Doctor testified that Talley is wearing an ill fitting truss but that he could do certain types of work, upon which the jury may have based their answer to Special Issue No. 7, wherein they found that Talley's total incapacity was not permanent. There is no testimony as to how long the incapacity lasted or will last, nor is there testimony as to when the partial incapacity began or will begin, or the degree thereof.

"It might be that Judge Ashe, the original Trial Judge, in not submitting to the jury the issues involving length of total or partial incapacity, or the extent of partial incapacity, may have intended rendering decision on such issues himself, but as his successor I can't tell what he may have had in mind, and by reason of the evidence adduced upon the trial of this cause as outlined above I find no gauge or measure therein that will enable me to determine the length of time Talley was totally incapacitated or the length of time he will be partially incapacitated, or the degree of such partial incapacity, and for the above reasons I decline to render any judgment in this cause.

"Dr. Armstrong also testified that unless an operation is performed a man who has a hernia will always have one. He also

stated that it was very infrequent to see a man working with a hernia because 'a man can't get a job that has a hernia. Men are very often now subjected to an examination before they are given a job and if they have a hernia they have to be operated on first.'

"May 14, 1937.

"(Signed) Norman Atkinson, Judge."

In the circumstances thus presented, it seems obvious that the coveted writ does not lie, since to issue it would be an unwarranted attempt to control the exercise of a judicial discretion that properly belongs to the trial court alone. 28 Texas Jurisprudence, Mandamus, par. 33, page 574, and cited authorities. Writ of mandamus refused.

Refused.